

ORIGINAL

2 TO CT

(12) R
5-1-02

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
HARRISBURG, PA

APR 3 0 2002

MARY E. D'ANDREA, CLE
Per _____

LINDA F. WEABER,
                    Plaintiff        :

        v.                        :        CIVIL ACTION NO:  1:01-CV-856

RAMBO

HERSHEY FOODS CORP.,
                    Defendant    :

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## PURSUANT TO MIDDLE DISTRICT RULE 56.1
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Hershey Foods Corporation ("Hershey"), by and through its counsel, McNees Wallace & Nurick LLC, submits the following Statement of Material Facts Pursuant to Middle District Rule 56.1 in Support of its Motion for Summary Judgment:

### GENERAL FACTS

1.     Plaintiff Linda F. Weaber ("Plaintiff") served as a Production Supervisor for Hershey at the time of her termination on May 21, 1999.  (Plaintiff Dep. Tr. p.125).

2.     In this position, Plaintiff supervised anywhere from 67 to 113 employees.  (Plaintiff Dep. Tr. pp.127-128).

3.     Plaintiff became a Production Supervisor in 1984.  (Plaintiff Dep. Tr. p.126).

4.     In 1996, Darryl Bentz became Plaintiff's direct supervisor.  (Plaintiff Dep. Tr. p. 136).

5.     Plaintiff remained under Bentz's supervision for approximately two years.  (Plaintiff Dep. Tr. p.45).

6.     Tom Soles succeeded Bentz as Plaintiff's supervisor.  (Plaintiff Dep. Tr. p.45).

7.      Soles became Plaintiff's supervisor in March 1998.  (Soles Dep. Tr. p.21).

8.      At the time of Plaintiff's termination in May 1999, Bentz was not Plaintiff's supervisor, superintendent or manager.  (Plaintiff Dep. Tr. p.45).

9.      Plaintiff was suspended until further investigation in May 1999, at which time she contends that she was told by Cindy Lighty, then Manager of Employee Relations at the Hershey Plant, that the suspension was related to "honesty."  (Plaintiff Dep. Tr. p.158).

10.     Plaintiff was terminated from employment with Hershey on May 21, 1999.  (Plaintiff Dep. Tr. p.163).

11.     Plaintiff has no evidence that Darryl Bentz was involved in the decision to suspend or terminate her in May 1999.  (Plaintiff Dep. Tr. p.136).

12.     Carolyn Haskell was Hershey's Manager of Health Services at the time of Plaintiff's termination.  (Haskell Dep. Tr. 5-6).

13.     Plaintiff has no evidence that Carolyn Haskell had any involvement in the decision to suspend or terminate her in May 1999.  (Plaintiff Dep. Tr. p.136).

## COUNT I: ERISA

14.     At no time was Plaintiff told by anyone that she was being terminated or fired to cut down on benefits.  (Plaintiff Dep. Tr. p.92).

15.     Plaintiff was never told that she was being terminated to avoid or reduce costs by saving salary.  (Plaintiff Dep. Tr. p.93).

16.     Plaintiff received nothing in writing at any time from Hershey regarding a plan to reduce administrative costs.  (Plaintiff Dep. Tr. p.93).

17.     Plaintiff never heard comments of any kind from anyone in management at Hershey indicating that Hershey needed to get rid of highly-salaried employees. (Plaintiff Dep. Tr. p.93).

18.     Following her termination, Plaintiff received correspondence dated May 26, 1999 authored by Kenneth L. Wolfe, Hershey's Chairman & Chief Executive Officer and addressed to "Fellow Employees." (Plaintiff Dep. Tr. p.93; Plaintiff Dep. Exhibit No. 4).

19.     In this correspondence, Wolfe referenced Hershey's failure to meet shareholder and investment community expectations for four quarters in a row. (Plaintiff Dep. Exhibit 4).

20.     Wolfe attributed Hershey's poor performance to a "slowdown in sales" and Hershey's "costs of doing business [being] too high given the lower sales volumes." (Plaintiff Dep. Exhibit 4).

21.     In his correspondence, Wolfe set forth four "interim actions" designed to reduce administrative costs:

- All 1999 sales increases for senior management were to be rescinded.

- Spending controls for all administrative cost centers were to be implemented immediately with the requirement of holding 1999 costs at or below 1998 cost levels.

- Similar cost controls were to be established for manufacturing common costs.

- An external hiring freeze was instituted for all current and future openings.

(Plaintiff Dep. Exhibit 4).

22.     During May 1999, Plaintiff had no conversations with anyone regarding how Hershey was going to reduce operating costs. (Plaintiff Dep. Tr. p.96).

23.     Plaintiff was replaced by Karen Keaton. (Plaintiff Dep. Tr. p.99).

24.     Plaintiff does not know how her absences or lost time accumulated compared to other employees at the 19 East Plant. (Plaintiff Dep. Tr. p.95).

- 3 -

25.     Plaintiff has no knowledge of the administrative cost center at Hershey.  (Plaintiff Dep. Tr. p. 95).

26.     Plaintiff's supervisor, Tom Soles, was compensated at a higher rate than was Plaintiff. (Plaintiff Dep. Tr. p.95).

27.     As of January 1, 1999, Hershey employed 66 production supervisors at the Plant where Plaintiff worked.  (Document D 1391-1392).

28.     As of that date, Plaintiff was compensated at an annual rate of $55,400.  (*Id.*)

29.     As of that date, 30 of the other 65 production supervisors were compensated at the same or a higher annual rate than Plaintiff.  (*Id.*)

## COUNT II: AGE DISCRIMINATION

30.     Plaintiff was born on July 9, 1947.  (Plaintiff Dep. Tr. p.9).

31.     As of January 1, 1999, Plaintiff was 51 years of age.  (Document D 1391-1392).

32.     As of that date, Plaintiff's successor, Karen Keaton, was 50 years of age. (*Id.*)

33.     Plaintiff contends that she was asked by her then-supervisor, Darryl Bentz, at what age she planned on retiring.  (Plaintiff Dep. Tr. p.100).

34.     Other than this question by Darryl Bentz regarding the age at which she planned to retire, Plaintiff knows of no comments by Hershey representatives referring to or mentioning removing older workers from the workforce.  (Plaintiff Dep. Tr. p.104).

35.     Plaintiff did not complain to Larry Weinsheimer nor Cindy Lighty regarding Bentz's inquiry about her retirement age and gave it no more thought.  (Plaintiff Dep. Tr. p.102).

36.     Plaintiff knows of no other employees disciplined or terminated because of his/her age.  (Plaintiff Dep. Tr. p.104).

## COUNT III: FMLA INTERFERENCE/RETALIATION

37.    Plaintiff was afforded FMLA leave in 1999.  (Plaintiff Dep. Tr. pp.64, 109).

38.    Plaintiff took FMLA leave prior to 1999.  (Plaintiff Dep. Tr. p.109).

39.    Plaintiff took FMLA leave on a variety of occasions and was reinstated to her prior position each time.  (Plaintiff Dep. Tr. p.109).

40.    Hershey maintained Plaintiff's health benefits each time she took FMLA leave. (Plaintiff Dep. Tr. p.109).

41.    Plaintiff also received some wage replacement benefits while on FMLA leave. (Plaintiff Dep. Tr. p.109).

42.    Plaintiff does not believe she was terminated for taking FMLA leave.  (Plaintiff Dep. Tr. p.110).

## COUNT IV

43.    Plaintiff was first diagnosed with diabetes in the mid-1990's.  (Plaintiff Dep. Tr. p.110).

44.    Diabetes does not affect Plaintiff's ability to care for herself.  (Plaintiff Dep. Tr. p.113).

45.    Plaintiff's diabetic condition occasionally affects her walking, as she may get "staggery" if her sugar is high.  (Plaintiff Dep. Tr. p.113).

46.    Plaintiff has never used a wheelchair, walker or cane.  (Plaintiff Dep. Tr. p. 113).

47.    Plaintiff's diabetic condition sometimes affects her ability to see due to "blurring vision."  (Plaintiff Dep. Tr. p.113).

48.     Plaintiff's eyesight has become worse with the diabetic condition.  (Plaintiff Dep. Tr. p.113).

49.     Plaintiff currently wears glasses.  (Plaintiff Dep. Tr. p.113).

50.     Plaintiff's vision problems are corrected with the glasses she wears.  (Plaintiff Dep. Tr. p.114).

51.     Plaintiff's diabetic condition prevents her from engaging in the hobby of fishing when her "sugar" is high.  (Plaintiff Dep. Tr. p.114).

52.     When her sugar is high and vision blurry, diabetes affects Plaintiff's ability to engage in sewing and crafts.  (Plaintiff Dep. Tr. p.114).

53.     Plaintiff does not know whether Cindy Lighty knew she suffered from a diabetic condition.  (Plaintiff Dep. Tr. p.117).

54.     Since September 2001, Plaintiff has been employed by Warrell Corporation.  (Plaintiff Dep. Tr. p.27).

55.     From September 2001 to February 22, 2001, the date of her deposition, Plaintiff did not miss any days of work.  (Plaintiff Dep. Tr. p.34).

56.     Since her termination from employment with Hershey in May 1999, there has been no period when Plaintiff was unable to work, except for a period of time which she attributes to food poisoning.  (Plaintiff Dep. Tr. p.32).

Respectfully submitted

McNEES WALLACE & NURICK LLC

By_____

Elizabeth A. Maguschak
Brian F. Jackson
100 Pine Street
P. O. Box 1166
Harrisburg, PA  17108-1166
(717) 232-8000

Attorneys for Defendant
Hershey Foods Corporation

Dated:  April 30, 2002

### CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing document, by hand-delivery, upon the following:

Andrew J. Ostrowski, Esquire
4311 North Sixth Street
Harrisburg, PA 17110

_____
Brian F. Jackson

Date: April 30, 2002